UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>JOHN IDICULA,<br><br>Debtor. | FOR PUBLICATION<br><br>Chapter 7<br><br>Case No. 12-12120 (MG) |

**MEMORANDUM OPINION AND ORDER DENYING MOTION FOR
<u>RELIEF FROM THE AUTOMATIC STAY</u>**

*A P P E A R A N C E S:*

SHELDON MAY & ASSOCIATES, P.C.
*Counsel for U.S. Bank, N.A.*
255 Merrick Road
Rockville Centre, New York 11570
By:   Brian P. Nelson, Esq.

MARY KATHERINE BROWN, ESQ.
*Counsel for U.S. Bank, N.A.*
147 Prince Street, Suite 24
Brooklyn, New York 11201

**MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE**

In this chapter 7 case of John Idicula (the "Debtor"), Select Portfolio Servicing, Inc., as

Servicing Agent on behalf of U.S. Bank National Association, as Trustee on behalf of the holders

of the Asset Backed Securities Corporation Home Equity Loan Trust, Series AEG 2006-HE1

Asset Backed Pass-Through Certificates, Series AEG 2006-HE1 ("U.S. Bank"), moves to vacate

the automatic stay pursuant to section 362(d)(1) of the Bankruptcy Code to permit it to proceed

with the foreclosure of the Debtor's primary residence (the "Property") located at 2219

1

Cincinnatus Avenue, Bronx, NY 10473 (the "Motion").[1] (ECF Doc. # 21.)  Neither the Debtor nor the chapter 7 trustee filed an objection to the Motion, but the lack of objection does not relieve U.S. Bank from the burden of establishing its right to relief.

For the reasons explained below, the Motion fails to provide any evidence that U.S. Bank owns or has the right to enforce the promissory note secured by the Property.  As a result, U.S. Bank has failed to establish that it has standing to pursue foreclosure of the Property.  Therefore, the Court denies the Motion to lift the stay without prejudice to renew if U.S. Bank is able to establish its standing.

## I.    BACKGROUND

On May 15, 2012, the Debtor filed a voluntary petition under chapter 7 of the Bankruptcy Code (the "Petition," ECF Doc. # 1.)  The Debtor's Statement of Intention, filed with the chapter 7 petition, states the Debtor's intent to maintain the Property.[2]  According to the Motion, the current amount due and owing under the mortgage is $639,365.25, and U.S. Bank has incurred legal fees and costs in the amount of $500.00.  *See* Mot. ¶ 6.  Mortgage arrears for the monthly installments have accumulated from November 2009 through August 31, 2012, totaling $145,703.92, and the Debtor has failed to make any payment to U.S. Bank on the Property since September 7, 2010.  *See Affidavit in Support of Motion for Relief from Automatic Stay*, signed by Gina Hiatt ("Hiatt Aff.," ECF Doc. # 21-2) at ¶¶ 7-8.  A recent appraisal estimates the value of the Property at $430,000.00.  *See* Mot., Ex. D.

---

[1]    For purposes of this Opinion, the Court shall refer to U.S. Bank as the movant.  Even if Select Portfolio Servicing is the movant, it is well-established that a mortgage servicer has standing to seek relief from the automatic stay, presuming, however, that the servicer is acting on behalf of a lender that has standing to seek stay relief.  *See, e.g.*, *In re Agard*, 444 B.R. 231, 235 n.1 (Bankr. E.D.N.Y. 2011) (citing cases), *vacated in part*. 2012 WL 1043690 (E.D.N.Y. 2012).

[2]    This case does not present the issue whether the same standing analysis should be applied if a debtor's stated intention is to surrender the property.  In such a case, the mortgagee can also pretermit the standing analysis with a stipulation to lift the stay with the debtor and any chapter 7 or 13 trustee.

The promissory note (the "Note") signed by Alleyamma John and John Idicula names Aegis Lending Corporation ("Aegis Lending") as the "Lender." The accompanying mortgage (the "Mortgage") lists Mortgage Electronic Registration Systems, Inc. ("MERS") as the mortgagee solely in its capacity "as a nominee for Lender and Lender's successors and assigns." Mot., Ex. B, at 3. The Mortgage further provides that MERS "holds only legal title to the rights granted by [Debtor] in [the Mortgage]," and that "[f]or purposes of recording [the Mortgage]," MERS is the "mortgagee of record." Id. at 1, 3. "MERS (as nominee for Lender and Lender's successors and successors and assigns) has the right:

> (A) to exercise any or all of those rights, including, but not limited to, the right to foreclose and sell the Property; and
>
> (B) to take any action required of Lender including, but not limited to, releasing and canceling [the Mortgage]."

Id. at 3.

The Note provides for the Debtor to pay Aegis Lending principal in the amount of $501,100.00 plus interest at a rate of 9.5%. Mot., Ex. A. Unlike the Mortgage, however, Aegis Lending did not confer any rights on MERS with respect to the Note. Id.

According to the Hiatt Affidavit, U.S. Bank "is a creditor by virtue of the fact that the note was transferred by way of allonge. (See Exhibit 'A.')." Hiatt Aff. ¶ 5. While the Hiatt Affidavit states that an allonge is attached as Exhibit A, Exhibit A is in fact only the Note *without* any allonge attached. The *Affidavit in Support of Motion for Relief From Automatic Stay Under 11 U.S.C. 362*, signed by attorney Ted Eric May ("May Aff."), also submitted with the Motion, states that U.S. Bank "has standing to bring this motion by virtue of the fact that the note was transferred by way of an allonge. (See Exhibit 'C.')." But Exhibit C is a Limited Power of Attorney, whereby U.S. Bank "hereby constitutes and appoints Select Portfolio Servicing, Inc." as attorney-in-fact "to execute and acknowledge . . . all documents customarily and reasonably

3

necessary and appropriate . . . ." Of course, the Limited Power of Attorney cannot authorize Select Portfolio Servicing to exercise any rights that U.S. Bank does not itself hold. Exhibit C does *not* include any allonge.[3]

The Note submitted with the Motion does include two endorsements that are not mentioned in the arguments in support of the Motion. Both endorsements were stamped side-by-side, below the borrowers' signatures, on the last page of the Note. The first endorsement provides as follows:

> PAY TO THE ORDER OF
> AEGIS MORTGAGE CORPORATION
> WITHOUT RECOURSE
> AEGIS LENDING CORPORATION
> *Trymeka McCoy*
> TRYMEKA McCOY
> ASSISTANT SECRETARY

The second endorsement, appearing to the right of the first, provides as follows:

> PAY TO THE ORDER OF
>
> WITHOUT RECOURSE
> AEGIS MORTGAGE CORPORATION
> *Trymeka McCoy*
> TRYMEKA McCOY
> ASSISTANT SECRETARY

Both endorsements are signed by the same person, Trymeka McCoy, apparently acting in the capacity of Assistant Secretary of Aegis Lending with the first endorsement, and in the capacity of Assistant Secretary of Aegis Mortgage Corporation with the second endorsement. Assuming the authenticity of the signatures and of the capacity of Trymeka McCoy as Assistant

---

[3] It is unclear to the Court whether the failure of the moving papers, or of the Affidavits of Ted Eric May or Gina Hiatt in particular, to include the alleged allonge, if there is one, is a result of sloppiness by counsel or of purposeful obfuscation by counsel or the moving party. The Court will have to await any renewed motion, with the necessary factual support for the motion, to reach a conclusion. The moving party here is represented by the same law firm that unsuccessfully sought to lift the stay in *In re Lippold*, 457 B.R. 293 (Bankr. S.D.N.Y. 2011) (discussed *infra*), because of the failure to establish that U.S. Bank had standing to seek to lift the automatic stay.

4

Secretary of the two different Aegis entities, the effect of the endorsements is that the Note was endorsed in blank (*i.e.*, a result of the blank space between "PAY TO THE ORDER OF" and "WITHOUT RECOURSE" in the second endorsement). As explained below, because under applicable New York law, delivery of the original Note endorsed in blank is effective to transfer ownership of the Note, it is *possible* that U.S. Bank does own the Note, or that it has the authority to exercise the rights of ownership as Trustee of the securitization trust that purports to hold the Note. At this stage, however, the Court can only speculate, because no evidence (indeed, no argument) has been presented to the Court in support of the Motion that delivery and possession of the original note endorsed in blank is the legal basis for the authority of U.S. Bank (and Select Portfolio Servicing on its behalf) to move to lift the automatic stay.

As already mentioned, the alleged allonge establishing U.S. Bank's right to be paid pursuant to the Note was never submitted to the Court. At the January 7, 2013 hearing on the Motion, U.S. Bank's counsel acknowledged that the record contains no evidence of U.S. Bank's purported ownership of the Note.

## II.    DISCUSSION

### A.  U.S. Bank is Not a "Party in Interest" Under 11 U.S.C. § 362(d)(1)

Section 362(a) of the Bankruptcy Code provides an automatic stay on all litigation against the Debtor, as well as "any act to create, perfect, or enforce any lien against property of the estate." 11 U.S.C. § 362(a). Under section 362(d)(1) of the Bankruptcy Code—the operative provision relied on by U.S. Bank in seeking relief—"[o]n request of a *party in interest* . . . the court shall grant relief from the stay . . . for cause." 11 U.S.C. § 362(d)(1) (emphasis added).

In *In re Mims*, 438 B.R. 52, 55 (Bankr. S.D.N.Y. 2010), this Court explained that the term "party in interest" is not defined in the Bankruptcy Code. Under Second Circuit law,

however, "in order to invoke the court's jurisdiction to obtain relief from the automatic stay, the moving party [must] be either a creditor or a debtor." *Id.* (citing *In re Comcoach*, 698 F.2d 571, 573 (2d Cir. 1983)); *see also Lippold*, 457 B.R. at 296. It follows that U.S. Bank must be a "creditor" to seek relief from the automatic stay.[4] *Id.*

Section 101(10) of the Bankruptcy Code defines a "creditor," in part, as an "entity that has a *claim* against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10)(A) (emphasis added). A "claim" is a "*right to payment*, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, legal, equitable, secured or unsecured." *Id.* § 101(5)(A) (emphasis added).

Despite the Bankruptcy Code's broad definition of a "claim," U.S. Bank "has not demonstrated its 'right to payment' because . . . it lacks the ability to seek the state law remedy of foreclosure." *Mims*, 438 B.R. at 56 (citing *Johnson v. Home State Bank*, 501 U.S. 78, 81 (1991) (finding that a mortgage foreclosure was a "right to payment" against the debtor)).

**B. U.S. Bank Lacks Standing to Foreclose on the Property**

"Standing is a threshold issue for a court to resolve." *Agard*, 444 B.R. at 245. State law governs the determination of property rights in a bankruptcy proceeding. *See Butner v. United States*, 440 U.S. 48, 54 (1979) (noting that absent an actual conflict with federal bankruptcy law, Congress "has generally left the determination of property rights in the assets of a bankrupt's estate to state law"); *In re Morton*, 866 F.2d 561, 563 (2d Cir. 1989). Under New York law, a plaintiff has standing to commence a mortgage foreclosure action "where it is both the holder or assignee of the subject mortgage and the holder or assignee of the underlying note at the time the action is commenced." *Bank of N.Y. v. Silverberg*, 926 N.Y.S.2d 532, 536 (2d Dept. 2011)

---

[4]   A creditor's authorized agent, such as a loan servicer, may also seek stay relief. *See* n.1 *supra*.

6

(citing cases). "[F]oreclosure of a mortgage may not be brought by one who has no title to it and absent transfer of the debt, the assignment of the mortgage is a nullity." *Kluge v. Fugazy*, 145 A.D.2d 537, 538 (2d Dept. 1988) (citing cases); *see also HSBC Bank USA, Nat. Ass'n v. Miller*, 26 Misc.3d 407, 411–12 (N.Y. Sup. Ct., Sullivan County 2009).

While the transfer of the mortgage without the promissory note is a nullity, once a promissory note is transferred from assignor to assignee, "the mortgage passes as an incident to the note." *Kluge*, 145 A.D.2d at 537; *see also In re Escobar*, 457 B.R. 229, 239 (Bankr. E.D.N.Y. 2011) (Trust, J.). An assignment of the note and mortgage can be effectuated by a written instrument or by physical delivery of the instrument from assignor to assignee. *Mims*, 438 B.R. at 56; *see also* N.Y. REAL PROPERTY LAW § 244 ("A grant takes effect, so as to vest the estate or interest intended to be conveyed, only from its delivery; and all the rules of law, now in force, in respect to the delivery of deeds, apply to grants hereafter executed.").

In *Mims*, this Court held that the movant, Wells Fargo Bank, N.A. ("Wells Fargo"), failed to supply proof that it was the owner of a promissory note given as part of a home mortgage loan. *Id.* Wells Fargo could not show that the note was either physically delivered or assigned pursuant to a written agreement. *Id.* Since Wells Fargo failed to prove it owned the note, it "failed to establish that it [had] standing to pursue its state law remedies with regard to the Mortgage and Property." *Id.* at 57; *see also Escobar*, 457 B.R. at 239 ("[A] note or mortgage assignee must demonstrate rights to proceed *under state law* as against the property at issue to have bankruptcy standing.") (emphasis added).[5]

---

[5] In New York, transfer of a promissory note is governed by the New York Uniform Commercial Code. The relevant sections are 3-202 and 3-204, which provide as follows:

> 3-202. Negotiation
>
> (1) Negotiation is the transfer of an instrument in such form that the transferee becomes a holder. If the instrument is payable to order it is negotiated by

7

Similarly, in *Lippold*, this Court held that the movant, also U.S. Bank, failed to establish standing to lift the automatic stay to allow U.S. Bank to foreclose on the debtor. 457 B.R. 293. As in this case, Aegis was the original lender and Select Portfolio Servicing was the loan servicer in *Lippold*. The mortgage transferred "those rights that are stated in [the mortgage]" to MERS, solely as Aegis's nominee, so that "MERS [holds] only legal title to the rights granted by [debtor] in [the mortgage]." *Id.* at 298. According to the mortgage, MERS is the "mortgagee of record[,]" and has the right, *inter alia*, to foreclose on the Property. *Id.* The language of the assignment in *Lippold* purported to transfer both the mortgage and the note to U.S. Bank. But the Court held that MERS, as the purported assignor, could not legally assign the note; it only had legal rights with respect to the mortgage. *Id.* ("Aegis did not confer any rights on MERS in

---

delivery with any necessary indorsement; if payable to bearer it is negotiated by delivery.

(2) An indorsement must be written by or on behalf of the holder and on the instrument or on a paper so firmly affixed thereto as to become a part thereof.

(3) An indorsement is effective for negotiation only when it conveys the entire instrument or any unpaid residue. If it purports to be of less it operates only as a partial assignment.

(4) Words of assignment, condition, waiver, guaranty, limitation or disclaimer of liability and the like accompanying an indorsement do not affect its character as an indorsement.

§ 3-204.  Special Indorsement; Blank Indorsement

(1) A special indorsement specifies the person to whom or to whose order it makes the instrument payable. Any instrument specially indorsed becomes payable to the order of the special indorsee and may be further negotiated only by his indorsement.

(2) An indorsement in blank specifies no particular indorsee and may consist of a mere signature. An instrument payable to order and indorsed in blank becomes payable to bearer and may be negotiated by delivery alone until specially indorsed.

(3) The holder may convert a blank indorsement into a special indorsement by writing over the signature of the indorser in blank any contract consistent with the character of the indorsement.

N.Y.U.C.C. LAW §§ 3-202, 3-204; *see also Escobar*, 457 B.R. at 241-42.

the Note—MERS is *not* a party to the Note nor is there any indication that MERS was authorized to take any action with respect to the Note."). Because U.S. Bank failed to "provide satisfactory proof of its status as the owner or holder of the note at issue," the Court concluded that U.S. Bank lacked standing to obtain stay relief. *Id.* at 299 (*citing Escobar*, 457 B.R. at 239). *See also Agard,* 444 B.R. at 237 (denying stay relief where the note was purportedly assigned by MERS to U.S. Bank, but MERS was "not a party to the Note" and no evidence was produced demonstrating MERS's "authority to take any action with respect to the Note"); *Silverberg,* 926 N.Y.S.2d at 538 (holding that because MERS was not the lawful holder of notes identified in a mortgage and note consolidation agreement, MERS did not have the authority to assign the power to foreclose).

      In this case, U.S. Bank has failed to show that it has standing to foreclose on the Property. The Note only contains two endorsements, one endorsement in favor of Aegis Mortgage Corporation and the other endorsement in blank. U.S. Bank's motion papers state that the Note was transferred by way of allonge to U.S. Bank, but the allonge was never submitted into evidence. The presence of the endorsement in blank likewise raises a question of the purpose that an allonge would serve. Delivery and possession of the original note would be sufficient to transfer ownership of the Note. In any event, at the hearing, counsel for U.S. Bank similarly failed to establish that the Note was assigned by a written instrument or by physical delivery of the instrument. The Court therefore concludes, as it did in *Lippold*, that U.S. Bank does not have standing to obtain stay relief.

### III. CONCLUSION

For the reasons explained above, U.S. Bank's motion to lift the automatic stay is denied without prejudice.

**IT IS SO ORDERED.**

Dated: January 10, 2013
       New York, New York

                                      *Martin Glenn*
                                   MARTIN GLENN
                             United States Bankruptcy Judge